## PILLIOD LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Sixth Circuit. June 3, 1929.

No. 5067.

Herbert W. Nauts, of Toledo, Ohio, for petitioner.

Clark T. Brown, Sp. Atty. for Bureau of Internal Revenue, of Washington, D. C. (Mabel Walker Willebrandt, Asst. Atty. Gen., and C. M. Charest, L. W. Scott, and Sewall Key, all of Washington, D. C., on the brief), for respondent.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. This is an appeal from the Board of Tax Appeals under section 1224, tit. 26, U. S. Code (26 USCA § 1224). From the findings of fact by

the Board and the original document, the nature of which is in controversy and which was used by both parties upon the argument upon the theory that it is a part of the record, it appears that the Pilliod Company, an Ohio corporation, undertook to make return and pay its excess profits, war profits, and income tax for the year 1918. To this end, in March, 1919, it filed a tentative return, which seems to have been complete in form and which was accompanied by a payment of part of the tax and a request for an extension of time for filing the final return. Within the extended time, and on May 31, it presented to the Collector of Internal Revenue in its district, and he received and filed, the document now in question. This consisted of six large pages, constituting form No. 1120, as furnished by the Internal Revenue Department to corporations for making their income and profits tax returns. Its caption was filled out with the name of the corporation, and all the various schedules, seven in number, which were appropriate, were filled out to show, in the customary detail, both the war profits and excess profits tax and the income tax. It also contained on attached sheets the detailed figures for five of the additional schedules called for by the form. The computations there found indicated a total tax for the year of $3,626.46, and the document was accompanied with the corporation's remittance for $813.23 which, with the previous tentative payment, equaled the amount shown due for the first two quarterly payments. It is to be assumed that the remaining half of the tax, as shown by this return, was duly paid, as nothing appears about it.

In December, 1921, the corporation's books and records for the year 1918 were examined by the agent of the Internal Revenue Bureau—an examination doubtless based upon this document, because his report was filed with the Commissioner December 13, 1921, and this "return" bears on its face a notation to that effect. The record further contains a letter from the Commissioner, the date of which is not given, but which is in reply to the corporation's protest of April 27, 1922, against the findings of the Bureau as to the tax for 1918, which findings had been set forth in a letter from the Bureau to the corporation on April 11, 1922, and which letter shows that the Bureau was insisting upon an additional tax payment for the same reason as later, viz., that the statement of invested capital which had been made by the corporation in this now questioned document was erroneous. The next

thing which appears is that shortly before September 17, 1923, the Bureau had called the attention of the corporation to the fact, which now appears from inspection of the document, that the blanks at the bottom of the last page, intended for the oath of the president and treasurer, had been left entirely unfilled; and on September 17, in due compliance with the request of the Commissioner, the corporation filed what was intended to be and was accepted as the oath of the president and treasurer in due verification of the document so filed in May, 1919. Nothing further was done until October 23, 1925, when the Commissioner made an assessment of a tax deficiency of $963 "as shown by Bureau letter dated April 11, 1922." From this deficiency assessment the corporation appealed to the Board of Tax Appeals; and the only question involved is whether the assessment was made within that period of five years after filing the return, to which period the right to assess is limited. Sections 277(a)(2), 278(a), Revenue Act of 1924 (26 USCA § 1057 note, and § 1058); section 250, Revenue Act of 1918 (40 Stat. 1082).

It is to be noted that the law providing for this return (section 239, Revenue Act of 1918 [40 Stat. 1081]) contains no requirement that it should be signed; and the blanks adopted by and used by the Revenue Bureau contemplate no signature as distinguished from the oath. The law does not require even that there be any signature to the oath, but only that the return be "sworn to."

With reference to this same statute, we held in Emmich v. U. S. (C. C. A.) 298 F. 5, that, even though such a document were not in fact sworn to, nevertheless it was a "return" within the scope of the statute punishing false returns; and it is urged with some force that a paper which is a good enough return to justify a conviction of felony, because it is a false return, is a good enough return to start the statute of limitations running. However, it may be said that a person offering such a paper as a return may not dispute that it is such, while the government may refuse to accept it as having that character; and we prefer to dispose of this case without dependence upon the Emmich Case.

The statutory requirement that the return should be verified is, of course, made to be observed and is of importance; it does not follow that the document, without the oath, is necessarily for all purposes a complete nullity. It would be the duty of the collector to whom such a paper was tendered

to refuse to receive it, and the omission would probably be at once corrected. Indeed, it is customary in many places for the taxpayer to take these returns in, present them to the collector, and swear to them before him at the time of the presentation. The purpose of this return is to put before the Bureau, in detail, all the facts and figures leading to the computation of the proper tax; and where it appears, as here, that the paper was complete in all details except for the lack of the oath; that it was tendered to the collector and received and filed by him as the statutory return; that it was made the basis of an examination some 2½ years later by the Bureau; that it was used by the Bureau as the basis of computations and corrections in April, 1922, 3 years after its filing; and that seemingly no one ever noticed until 4½ years after its filing that no oath was indorsed upon it—under all these circumstances, we think it must be treated by the Government as such a "return," as of its filing date, that the time for making assessment against the taxpayer then began to run.

Our attention is not drawn to any decision directly in point, and we find none. "Return" is a word of general meaning. With reference to a sheriff's return or a return to an appeal, it is common to find returns which are not good under the law but which nevertheless may be amended, as could not be done if they were nullities. This is not a prosecution for perjury, but calls only for a reasonable application of the statute of limitations, one purpose of which is the protection of the taxpayer against claims asserted too long a time after the occurrences upon which they are based. We think a reasonably liberal construction of the word is appropriate to this situation.

Further considerations may be noted: The antithesis of "after the return was filed" of section 277 is the "failure to file a return" of section 278, which permits assessment "at any time." Where there has been, as here, such a filing of return that no one for some years discovers any defect, but the Bureau and the taxpayer both act as if upon a due return, a Congressional intent that a deficiency may be levied 10 or 20 years later seems improbable.

Again: Section 239 of the Revenue Act of 1918, requires three things in the return, gross income, deductions, oath. Each is as essential as the other; yet the omission of items of income or deductions would justify asking an amended return—not ignoring it as nonexistent.

Though the matter is not as clear as we would wish, we think the conclusion of the Board of Tax Appeals must be reversed, and the matter remanded to that Board for appropriate action.

MOORMAN, Circuit Judge (dissenting). I cannot concur. The statute says that a corporation shall make a return stating specifically the items of its gross income, and the deductions and credits allowed, and that the return shall be sworn to by the president or other principal officer, and by the treasurer or assistant treasurer. Until there has been a substantial compliance by the corporation with these requirements of the statute, there is no return—and hence limitation cannot begin to run. The report which appellant filed purported to show income, with deductions and credits, but was not sworn to. The statute just as specifically requires the doing of the latter as the former. If its purpose, as I think and the majority opinion holds, is to require the corporation to put before the Bureau, as accurately and truly as possible, the facts and figures necessary to a correct computation of the proper tax, then it would seem that the verifications under oath are quite as important as the other requirements. Indeed, nothing could be quite so effective of that purpose as the putting of the obligations and hazards of an oath upon the conscience of those whose duty it is to make the report. Congress thought it important enough to require *two* officers of the corporation to swear to the report.

It was not shown in this case whether the report was mailed to the collector or was handed to him or one of his assistants. If it had been tendered to the collector and he had refused to receive it because it was not sworn to, I should not suppose that any one would contend that it was a return. On the other hand, a report tendered in the prescribed form would have been sufficient, I should think, even if rejected by the collector. The question then turns, as it would seem from the opinion of the court, upon the action of the collector. He, or some one in his office who attended to such matters, filed the report, mistakingly thinking, I have no doubt, that it was properly verified, as I assume the corporation did, too. The statute, as I have said, could only be set in motion by the doing of certain things by the corporation. It failed to do those things; but it now contends, and the majority opinion in effect holds, that notwithstanding its failure the statute nevertheless became effective because the collector, thinking that the corporation had performed its duty, failed to observe its mistake. I do not think this is sound. It would not be thought to be, I am sure, in the case of a

248

document purporting to be a return which did not pretend to show gross income, with allowable deductions and credits. Having in mind the purpose of such returns, I fail to see why there should be any distinction between that case and this.

The state cases that were cited in argument hold that, in the absence of compliance with a statute which requires a return to be verified under oath, there is no return. Lawrence v. Janesville, 46 Wis. 364, 1 N. W. 338, 50 N. W. 1102; Newell v. Whitingham, 58 Vt. 341, 2 A. 172; Narragansett Pier Co. v. Assessors, 17 R. I. 452, 23 A. 11; and Lee v. Commonwealth, 6 Dana (Ky.) 312. The question was not ruled differently in Emmich v. United States (6 C. C. A.) 298 F. 5. In that case the defendant was charged with "knowingly, wilfully and feloniously attempting to defeat and evade" a tax. The return was set forth merely as the means of the attempt. The point was made that it was not a return, because it was not sworn to. The court held that there was evidence to show that it was sworn to. That holding was entirely sufficient for the purposes of the case. What was further said about the return was in connection with its admissibility in evidence. It should have been admitted because, as appears from the record of that case in this court, it showed on its face that it was sworn to. That of itself was sufficient for its admission.