HELVERING, Commissioner of Internal Revenue, v. NATIONAL CONTRACTING CO.

No. 9735.

Circuit Court of Appeals, Eighth Circuit.

Feb. 19, 1934.

John MacC. Hudson, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

H. V. Mercer, of Minneapolis, Minn., for respondent.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This case is presented on petition to review that part of the decision of the Board of Tax Appeals, 25 B. T. A. 407, in which the Board refused to assess income tax deficiencies against the National Contracting Company for the years 1923 and 1924.

The Commissioner of Internal Revenue claimed that the contracting company had completed certain building contracts during those years, and that it was required to make return of the income as provided by Treasury Regulation 65, article 36 (b), which says: "(b) Gross income may be reported in the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice to so treat such income, providing such income clearly reflects the net income."

The taxpayer contended that it did not complete the contracts referred to until the year following, in 1925. It is clear and conceded that the regulation was applicable because the taxpayer had consistently followed the completed contract method of returning. Formal acceptance of the work was long delayed, and there is no claim that the date of such acceptance is material. The only duty of the Board was to find from the evidence when the contracts were completed.

The Board found that at various times between February 7, 1920, and July 11, 1921, the contracting company and the independent school district No. 35 of the state of Minnesota entered into eight contracts for the construction of two school buildings for and on the property of the latter. In accomplishing the terms of such contracts, the respondent conducted all the work done as a single job, and there was no separate operating organization for either of the two buildings or for any one of the several contracts. A great part of the work was done by the contracting company, but some parts thereof were performed by subcontractors. The company had supervision, control, and direction of all the work under all the contracts, and was obligated under bond to the owner for the discharge of each in conformity with conditions set out in the several contracts and with the terms and provisions of the "General Conditions of the Contract" to which each was attached. The contracting company began work under the contracts in February, 1920. On October 8, 1921, at the instance of a taxpayer of the district, it was enjoined from proceeding further with the work of construction, which was then about 90 per cent. complete. In June, 1923, the injunction was dissolved, and work was renewed and continued until all the terms and conditions of the several contracts were discharged early in 1925. The injunction proceeding also suspended the operation of all subcontractors engaged in the work. During the period over which the work of the contracting company was suspended under injunction, the construction already completed was damaged by the elements, and on resumption thereof it was necessary to do much extra work, and extra materials in substantial amounts were necessary to repair and replace damaged parts. All such repairs and replacements were required before operations for completion of the entire job could be resumed.

In 1925 the respondent made payments in connection with the contracts here involved in amount of $53,474.95, of which $23,000 represented attorney fees, for the most part incurred in the injunction proceedings. The respondent's books show the direct cost of material and labor chargeable against the gross income realized from the completion of the two school buildings. During the years 1920 to 1924 all overhead expenses are reflected in its books, but no allocation of any ratable part thereof was made to the contracts here in question until some time in 1925.

The opinion of the Board presents the reason for its decision with force and clarity, and we refer to it rather than to reprint what is said.

The assignments of error present the contention for the commissioner that the Board erred as a matter of law in deciding that "The General Conditions of the Contract," together with the eight separate contracts attached thereto, covered a single job, and that the contracting company did not finally complete its contract with the school district within the

254

meaning of the regulation until it had discharged all of the obligations undertaken in each of the eight contracts. It is argued that each of the individual contracts was in fact finally completed at certain dates during 1923 and 1924.

■■ In general, it may be said to be the aim of the income tax laws to compel return from taxpayers in respect to income which accrues to them during the period of each tax year, and the line is drawn sharply to mark off one tax period from another. So income from long-term contracts is taxable for the period in which the income is determined; such determination depending upon the nature and terms of the particular contract. Treasury Regulation 62, article 36.

The contracts in this case were long-term contracts, and, if it could be said upon the facts shown in the record that the taxpayer's income from any one of them was determined in 1923 or 1924 and that the Board refused to assess notwithstanding, there would be error in a matter of law remediable here. But the record discloses that the Board took into consideration the nature and terms of the contracts as written, the details in execution and in accounting, and its conclusion was that as a matter of fact, under the particular circumstances, such profits as accrued were known and determined when the whole job was completed in 1925. No witnesses were called for the Commissioner, and there was substantial testimony adduced by the taxpayer to sustain the decision of the Board.

We recognize the importance of the taxation question which the Commissioner seeks to raise. The so-called "General Conditions of the Contract" form of the American Institute of Architects is undoubtedly widely used between owners and building contractors. A broad aim of it is to tie up the work and the obligations of all the contractors and subcontractors and bondsmen and the owner with the final completion and acceptance of the building.

It is not intended to decide here that the effect of the general conditions is always to postpone the return date for building contractors or subcontractors beyond the time when they complete and have accepted the work specifically contracted for by them. It may be that frequently the general conditions create a tax situation for building contractors similar to that considered by the court in Vang v. Lewellyn (C. C. A.) 35 F.(2d) 283, and Cronin Co. v. Lewellyn (D. C.) 9 F.(2d) 974, in relation to road contractors. Their road contracts include mainte-

nance agreements for periods of years, and it was held that, when the construction work was finished and the contract price paid and the road turned over, the contract was completed and the income returnable, notwithstanding the continuing obligation to maintain the road.

■ But in this case, upon the facts found by the Board from sufficient evidence, the obligations of the building contractor imposed by the general conditions entailed continuing burdens in respect to each contract covering the particular parts of the work and the whole work until the buildings were completed, and, as a matter of fact, there was no determined income as to any of the contracts until the whole job was completed.

Because there was no error in matters of law and there was substantial evidence to support the findings of fact and decision of the Board, the decision is affirmed.