## NATIONAL CONTRACTING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11397.

Circuit Court of Appeals, Eighth Circuit.

July 11, 1939.

H. V. Mercer, of Minneapolis, Minn., for petitioner.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER and WOOD-ROUGH, Circuit Judges, and BELL, District Judge.

WOODROUGH, Circuit Judge.

This case is brought to this court on petition of the National Contracting Company to review the decision of the Board

of Tax Appeals, reported in 37 B. T. A. 689. Taxes on income of petitioner accrued in the year 1925 are involved. Also a penalty assessed for failure to make return for the year 1925. The assessments were made by the Commissioner upon determination of deficiency on January 8, 1935.

The case follows upon another between the same parties, decided by this court on February 19, 1934. Helvering v. National Contracting Company, 8 Cir., 69 F.2d 252. In that case the Commissioner sought to collect income tax from the corporation in respect to income received by it during the years 1923 and 1924. It was there made to appear to this court that at various times between February 7, 1920, and July 11, 1921, the Contracting Company and the Independent School District No. 35 of the State of Minnesota had entered into eight contracts for the construction of school buildings for and on the property of the latter, and that the contracting company had begun the construction in February, 1920, and had completed 90 per cent of it in October, 1921, when further prosecution of the work was enjoined at the instance of a taxpayer, causing delay to the contracting company. The company completed the buildings and discharged all the obligations of its contracts early in 1925. It claimed that it was not liable to any income tax in respect to the large amounts which it admitted it had received on the contracts during the tax years 1923 and 1924, because it had not completed the contracts during those years, and it relied upon Regulation 69, Article 36(b), which reads:

"Art. 36. Long-term contracts.—Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used herein the term 'long-term contracts' means building, installation, or construction contracts covering a period in excess of one year. Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon the following bases:

\*      \*      \*      \*      \*      \*

"(b) Gross income may be reported in the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion."

This court held that the contracting company having elected "as a consistent practice" to report its gross income from its construction contracts in the taxable year in which its contracts were completed, could not be held in respect to the income which it had derived from part performance of the contracts in the years prior to the completion in 1925. We avoided the tax on that ground.

Thereupon the Commissioner found deficiency and assessed the tax against petitioner on the basis of income accrued from the same building contracts referred to as Contracts 60–63–64, in the year 1925. He also assessed penalty of 25 per cent for failure of the petitioner to make the return required by law. The petitioner thereupon claimed that the statute of limitations had run against the assessment and it appealed on that and other grounds to the Board of Tax Appeals. The Board found that the petitioner had failed to make return for the tax year 1925 as required by section 239(a), Revenue Act 1926, 44 Stat. 45, and that the statute of limitations had not commenced to run against assessment of tax on the income accrued in 1925. It sustained the tax and also the assessment of the penalty, and this appeal is taken to reverse the decision.

The facts are found with meticulous care and set forth by the Board in connection with its reported opinion, supra. The taxpayer contends, (1) that this court should find that it did make return for the year 1925 sufficient to start the statute of limitations running in 1927 and to bar the assessment made in 1935, (2) that sums aggregating $73,500 paid out by it in the year 1920 to Tollef Jacobson, A. G. Shulind and J. O. Shulind, were an ordinary and necessary business expense incurred by it in performing the building contracts for which it was entitled to deduction or else that the sums so disbursed were not a part of its gross income, and (3) that

an item of $21,665 should have been deducted as a debt found to be bad and lost in the taxable year.

■ 1. As stated by the Board, the burden of proof of facts sufficient to sustain the plea that the statute of limitations had run against the assessment was upon the petitioner. Its testimony was, that in March, 1926, it had filed an income tax form 1120 for the year 1925, verified by its president and stamped "Tentative Return", and that on May 15, 1926, it filed another return form 1120 for the same year, as to which the Board found: "On its face only the formal parts at the top of the form were filled in, and a typed sheet was pasted to the form, which states in substance that the return is submitted subject to the final disposition of the petitioner's tax liability for the years 1920-1924 'now pending before the Commissioner of Internal Revenue', and that the right is reserved to amend the return upon such final disposition since there are items pending which affect the year 1925. This rider states further that, the taxpayer having elected to report on a completed contract basis, there is no taxable profit since no contracts were completed during the taxable year, and all expenses during the year were assigned to contracts under way and not completed. The remainder of the form contains only comparative balance sheets as of the beginning and the end of the year, and the verification affidavit subscribed to by the president and treasurer of the petitioner."

■ The document is in the record and conforms to its description by the Board. We think the Board correctly held that as the documents filed by the taxpayer did not state, or attempt or purport to state, the items of its gross income or deductions or credits as required by section 239 of the Revenue Act 1926, they were not the returns required by that section, and that their filing did not set the statute of limitations in operation. Lucas v. Pilliod Lumber Co., 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L.R. 1350; Florsheim Bros. v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542. They did not evince "an honest and genuine endeavor to satisfy the law" requiring items of gross income deductions and credits to be returned. Zellerbach Paper Co. v. Helvering, 293 U.S. 172–180, 55 S.Ct. 127, 131, 79 L.Ed. 264.

■ It appears that in 1927 a revenue agent examined the petitioner's books and made a report covering the taxpayer's business for the taxable year 1925. He reached the conclusion that the taxpayer's operations had resulted in loss to it during the period and that no tax was assessable. His report states that he explained his findings to the officers of the taxpayer and they concurred with him in all his findings. A copy of the report was thereafter transmitted by the revenue agent to the taxpayer and it acknowledged receipt thereof. The form attached to the report contained a blank to be signed by the taxpayer to the effect that the taxpayer had reviewed the report and accepted as correct the findings of the examining officer, but the taxpayer did not sign it.

The letter of the revenue agent transmitting copy of his report to the taxpayer contained the following: "In the event the recommendations are not approved upon review in Washington, you will be notified and given opportunity to discuss the changes with this office, or should you fail to protest to this office, any protest which you may subsequently file with Washington will be referred to this office for consideration." The report of the revenue agent was transmitted to Washington and was attached to the taxpayer's purported return of May 15, 1926. A stamp is found upon that return, copied into the record here by photostat from the document as it appears in the file in Washington, in the space left blank for "Auditor's Stamp", which reads, "Tax Liability—None". "Audited by W. A. Simpson".

In 1928 the president of petitioner went to Washington to ascertain whether the whole tax situation of the company could not be opened up and straightened out as a unit, but litigation was then pending concerning the taxes for 1923 and 1924 and permission was refused.

The taxpayer contends here that even if the filing of documents which it made in March and May of 1926 did not constitute making a return within the statute, that such documents should be taken together with the examination and report and letter of the revenue agent and the actions of the employees of the government at Washington, and it should be found on consideration of all that was done that the statute was started running. It is

also contended that what was done amounted to a final assessment of "no tax" sufficient to start the statute. The arguments to support the conclusion that a tentative signed report may be considered together with a later complete but unsigned report are persuasively stated in Pilliod Lumber Company v. Commissioner of Int. Rev., 6 Cir., 33 F.2d 245. But the Supreme Court reversed in 281 U.S. 245, 50 S.Ct. 297, 299, 74 L.Ed. 829, 67 A.L.R. 1350, holding that a taxpayer must make "meticulous compliance * * * with all named conditions in order to secure the benefit of the limitation", citing Florsheim Bros. v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542. This taxpayer did not supply to the Commissioner any substantial basis for tax determination in any document signed by its officers, nor did it make any good-faith attempt to do so.

■ We concur in the reasoning and conclusion of the Board that there was no evidence to justify a finding that the taxpayer made a return for the taxable year, and we find no basis to conclude that the Commissioner made any assessment of tax prior to January 8, 1935. The statute of limitations was tolled by the failure to make return. Lucas v. Pilliod Lumber Co., supra. We also agree with the Board that upon failure of the taxpayer to make return, the statute made it mandatory upon the Commissioner to assess the 25 per cent penalty. Edmonds v. Commissioner, 9 Cir., 90 F.2d 14; Scranton—Lackawanna Co. v. Commissioner, 3 Cir., 80 F.2d 519.

■ 2. The $73,500 Item. The Board has correctly set out the substance of a contract entered into between the company, two of its principal stockholders and one Tollef Jacobson, in July, 1920. The contract was designated an assignment in the body of the instrument and purports "in consideration of one dollar and other valuable considerations" to "bargain, sell, transfer, sublet and set over unto the second parties" "to each an undivided interest" in certain enumerated building contracts then in course of performance by the contracting company, and also "all contracts for extensions and additional work". The obligations to be undertaken by the individuals were specified in the agreement "that they would assume and carry out and conform to all covenants and agreements contained in" the construction contracts, "in accordance with the resolution adopted by the Board of Directors of the National Contracting Company", attached to the contract. The resolution of the Board of Directors of the corporation attached to the contract authorized its officers "to negotiate with responsible parties and if a deal can be consummated to execute on behalf of the corporation subcontracts and assignments of all uncompleted work and contracts, together with all additions or extensions of the work in connection with such contracts, providing the company shall receive as consideration or profit the sum of $31,500.00 above the actual cost of all said work, including office expense, salaries and interest. The subcontractors shall finance, and pay all future expenditures in connection with the work together with any and all obligations contracted for previous to this date shown on the company's books to be cost on work referred to above, and shall receive per cent retained. Be it further resolved that a copy of this resolution shall be attached and become part of any subcontract that the officers of the corporation may enter into."

The Board found upon sufficient evidence that the individuals to whom the assignment contract was given never treated it as a subletting of the construction contracts to them, and it is clear that there was no intention that they should individually take over any of the work as subcontractors, and they did not do so. The fact was established and the Board found that the corporation itself and not the individuals, carried on all of the work done in obtaining further contracts and carrying on the performance of all the contracts to the final completion of contracts 60–63–64 in 1925. The assignment contract to the extent it was acted on by the parties was held to have operated merely as an assignment of petitioner's expected or future profits under the contracts. The Board held that the income earned and received by the contracting company was taxable to the company, notwithstanding such assignment. It is contended by petitioner that the word "sublet" found in the assignment contract operated to make all the assignees to the contract subcontractors of the construction work. But the word "sublet" was used with "bargain", "sell", "transfer" and "set over" to effectuate the "assignment". The activities were ended and the Board looked to what had been done by the parties, and reading the contract in the light of what had been

done, it properly found that no more than an assignment of petitioner's expected or future profits under its construction contracts had been effected. The earnings and profits accrued to the petitioner and it was taxable in respect to them, but was entitled to such deductions as the law allows. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Van Meter v. Commissioner, 8 Cir., 61 F.2d 817; Rossmoore v. Commissioner, 2 Cir., 76 F.2d 520.

The present case is readily distinguishable from Iowa Bridge Co. v. Commissioner, 8 Cir., 39 F.2d 777. There certain construction contracts were assigned to the president of the company, who, unlike the assignees in the instant case, actually took over the contracts and completed the work thereunder. The basis of the decision was that there had been a valid assignment of the contracts and since the construction thereunder had actually been performed by the assignee, he was taxable upon the income flowing therefrom. Here the work was not performed by the assignees but by the petitioner and in the petitioner's name. That fact alone serves to distinguish the two cases.

We inquire first whether the disbursements made to Mr. Tollef Jacobson were deductible. The proof is that in 1920 the financial position of the contracting company was such that although it had good prospects of obtaining additional building contracts, it was unable to comply with requirements of the bonding companies or to obtain sufficient bank credits. The contract was given to Mr. Jacobson because he was a banker and in position to extend the line of bank credit to the petitioner. The petitioner attained a financial condition which justified the extension of its line of bank credit and which enabled it to endure through a difficult period when it had large amounts outstanding which it could not collect. Mr. Jacobson "had sometimes served the petitioner as personal surety required by the companies which bonded the petitioner and the petitioner's borrowings were largely obtained from Mr. Jacobson's banks or through his banking connections. It was for his continued co-operation in these matters that he was paid $24,500.00". The amount was estimated to be the share of the profits due him under the July contract of 1920.

■ The Board fully recognized that financing is an ordinary and necessary expense in such business as this taxpayer was engaged in, but it cited the settled rule that "the burden of proof is on the petitioner to show 'that extraordinary, unusual and extravagant amounts paid by a corporation' are in reality 'ordinary and necessary expenses.' Botany Worsted Mills v. United States, 278 U.S. 282, [49 S.Ct. 129, 73 L.Ed. 379]; Alexander Sprunt & Son, Inc. v. Commissioner [4 Cir.], 64 F. 2d 424." [37 B. T. A. 699.]

■ The Board then pointed out that "While there were services rendered to the petitioner by Jacobson, there is no showing as to their time or extent, nor of their entire applicability to contract 60–63–64, nor that $24,500.00 or any other sum represented their reasonable value." The evidence is clear that Mr. Jacobson did not make any advancements to the corporation. He did not testify as a witness and no reason appears for failure to adduce his testimony.

This court is urged upon search of the record by it to identify some acts of personal service rendered the petitioner by Mr. Jacobson, to relate them to the particular contracts completed in 1925, and to find that they were of the reasonable value of the amounts disbursed to him and claimed as deductible. The petitioner having contested the tax through many years was apprised of the burden of proof upon it in respect to its claim for deduction and was, as far as the record discloses, in position to show clearly and exactly what the personal services of Mr. Jacobson were that it relied upon. The Board having given full recognition to the applicable law, its finding that the proof was insufficient to sustain petitioner's burden of proof must be affirmed.

■ Turning to the deduction claimed on account of the payments made to A. G. Shulind and J. O. Shulind, the principal stockholders of petitioner and its managing officers, it appears that before the corporation could obtain the extension of bank credit or qualify for bonds required of it, its financial condition had to be improved. This was accomplished in the conventional manner by the issuance of additional capital stock to the Shulind brothers. They gave their notes at the banks and the money thereby obtained was credited to the corporation and capi-

tal stock exceeding the amounts advanced by them was issued to them. A 20 per cent dividend on the stock so issued to them was declared for the year 1920. The Board recognized that an arrangement may lawfully be made between a corporation and its principal stockholders looking to the distribution of the expected profits of the corporation to the stockholders. But such contracts where executed accomplish the same effect as distribution of corporate earnings by cash dividends. The Board cited the cases in which such arrangements have been considered by the courts and the Board. L. Hyman & Co. v. Commissioner of Int. Rev., 21 B.T.A. 159, 167; Moxa Building Co. v. Commissioner of Int. Rev., 31 B.T.A. 457, affirmed, per curiam, 2 Cir., 79 F.2d 1004; Samuel Heath Co. v. United States, Ct.Cl., 2 F. Supp. 637; C. S. Ferry & Sons Inc. v. Commissioner of Int. Rev., 18 B.T.A. 1261. They clearly establish that such distribution of a part of the corporation's profits to its principal stockholders as here disclosed must be held to be dividend distribution unless the contrary is clearly proved. The Board held no personal service by the Shulinds to the corporation was shown except the advancing of certain money for which they received stock of the corporation and cash of the corporation in amounts disproportionate to the advancements made. The finding of the Board that the transactions did not differentiate them from dividend distribution to stockholders or justify deduction on account of ordinary and necessary expense to petitioner is sustained.

The taxpayer also presents another contention in its brief concerning the $73,500 items which it apparently has never advanced at any other time during the many years that have elapsed since it made the disbursements in 1920. It argues now that the case may be treated as though the National Contracting Company had not in fact contracted to build and had not built the structures included in its contracts 60–63–64, or earned the profits thereof, but that the work was that of a joint enterprise carried on by its two stockholder officers, Mr. Jacobson, and the corporation; that a tax return ought to be exacted from the joint enterprise as a taxable unit and that whatever tax is due on account of the profits on the job which was completed in 1925 ought to be assessed against such joint enterprise and collected from the individuals and corporation composing the same. The point has been elaborated with ingenuity.

But it appears that the contracting company at all times held itself out as the contractor on the job to the public and to the tax collectors. It so represented in all the tax returns it made and it secured the cancellation of its 1923 and 1924 taxes by decision of this court that it had been the contractor on the job in question and that as such contractor it had elected to make its returns under Regulation 69, and that it had completed the contracts in 1925. In its petition to the Board of Tax Appeals, it alleged that it was "the corporation which was engaged during the years 1920 to 1925" in the prosecution of a long term building contract known as "Cont. 60–63–64", and that it had earned gross income thereby. That it was entitled to deductions from the gross income gained by it and that "the arrangements" it had made with the Shulinds and Mr. Jacobson resulted in "an absolutely necessary expense to said Company". In its petition to this court the taxpayer again asserted that "petitioner was during all of the times herein involved a Minnesota corporation engaged in the general building and construction contracting business", and that "the taxpayer in said business kept its books and reported its profits and losses on its long-term contracts on a completed contract basis". Error was asserted in the refusal of the Commissioner to allow the disbursements which the corporation had made in 1920 as "necessary, ordinary and reasonable expense" of the corporation.

The Board of Tax Appeals was not called upon to and did not consider the contention as to the existence of another and different taxable entity which is now argued here. The Board did find as a fact upon sufficient evidence that it was the taxpayer itself which had performed and fully completed the contracts 60–63–64 and which had earned and collected the proceeds. That finding may not be disregarded in this court. "It is only in exceptional cases * * * that questions not pressed or passed upon below are reviewed." Duignan v. United States, 274 U.S. 195, loc. cit. 200, 47 S.Ct. 566, 568, 71 L.Ed. 996. The rule is applicable in proceedings to review the decisions of the Board of Tax Appeals. Kottermann v. Commissioner, 9 Cir., 81 F.2d 621-623.

There is no reason to expect that a more just tax could now be determined or assessed against the individuals and the corporation as a joint enterprise unit for taxation, and there is no exceptional case to justify this court to depart from the record made by the taxpayer. The finding made by the Board on sufficient evidence that the taxpayer earned and received the income in question must control decision here.

The $21,665.15 Item. The Board found upon sufficient evidence that in July, 1919, the petitioner undertook certain construction work known as Contract 53 under an oral contract on a "cost plus" basis, and although it was prevented by injunction from finishing the work in that year, it nevertheless treated the contract as completed in that year and made return of its income on that basis and paid tax on the claimed profits in that year. But it had been obliged in the same year, 1919, to bring a cross action in the injunction suit to recover those amounts which it had expended and which had not been repaid to it, and for the amount of $6,515.67 it claimed for its overhead and profits. The litigation continued until final judgment in 1925. Petitioner was then awarded judgment for $5,661.27, said judgment being a sum $21,665.15 less than it had sued for. The judgment was based on quantum meruit. Petitioner seeks to have the $21,665.15 deducted as a loss incurred in 1925 when the litigation was terminated by the judgment.

It was the conclusion of the Board that the petitioner was not required to return or pay the tax upon the contract numbered 53 prior to its completion of the work as decided by this court in Helvering v. National Contracting Company, supra. But petitioner having elected to do so, it must be held to consistent practice. Having accrued the income from the contract 53 as "completed" in 1919, petitioner's claim for deduction must be considered in relation to the return and tax adjustment determined for 1919. At the time that return was made, the petitioner's claim to the extent of the $21,665.15 was a litigated claim and recovery was contingent and uncertain. The adjudication was that the petitioner was not entitled to all the money it claimed. In such circumstances, the conclusion of the Board that no deduction could be made in 1925 of the $21,665.15 which petitioner failed to recover in that year was proper. Commissioner v. John Thatcher & Son, 2 Cir., 76 F.2d 900.

The petitioner contends that a different rule should be applied here because it always believed that the money coming to it from the school district on contract 53 was fixed as to amounts by contract and the amounts were carried on its books as contract obligations, and that it was not until the judgment was rendered in 1925 that the oral cost-plus contract was held void and the claim was resolved upon a quantum meruit basis. The judgment of the District Court in evidence before the Board does not disclose its basis in this regard but refers to the decision and mandate of the Supreme Court of Minnesota by which the judgment of the District Court was controlled. In the opinion of that court, Williams v. National Contracting Co., 160 Minn. 293-298, 199 N.W. 919, 921, it is recited "that at the opening of the trial [in the District Court] it was admitted by the * * * National Contracting Company, that the said cost-plus contract was void and unenforceable and the question litigated was as to the value to the defendant school district of the improvement which was made by said defendant contracting company under said cost-plus contract." There is no evidence to what extent the limitation of the litigation to the quantum meruit basis affected the recovery which was had. The fact was as found by the Board that the petitioner was given judgment on a quantum meruit basis for part of its claim only. Its failure to recover the full amount sued for presented no basis for deduction on account of lost debt in 1925. It had only a claim and not a debt in 1919. Commissioner v. John Thatcher & Son, 2 Cir., 76 F.2d 900; North American Oil Co. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Cleveland Ry. Co. v. Commissioner, 6 Cir., 36 F.2d 347; Wadsworth Mfg. Co. v. Commissioner, 6 Cir., 44 F.2d 762.

On consideration of all contentions made by petitioner, the decision of the Board of Tax Appeals is affirmed.