JAMES O'CONNELL AND MARGARET MUREL O'CONNELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Connell v. Commissioner
Docket No. 4524-78.
United States Tax Court
T.C. Memo 1980-432; 1980 Tax Ct. Memo LEXIS 160; 41 T.C.M. (CCH) 62; T.C.M. (RIA) 80432; September 25, 1980, Filed John R. Kline, for the petitioners. Stewart C. Walz, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1974
$15,726.99
1975
10,623.45
*161 The issues are (1) whether petitioner James O'Connell, executor of his father's estate, is taxable on the executor's fees paid by the estate in 1974 and 1975, and (2) if petitioner is taxable on such fees, whether he is entitled to any deductions for services rendered to the estate by a family-owned corporation. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. James O'Connell ("Petitioner") and Margaret Murel O'Connell, [1] husband and wife, resided in Helena, Montana, at the time they filed their petition in this case. Petitioner's father, J. E. O'Connell ("decedent"), died testate on October 8, 1972, in Helena, Montana. Decedent's Will was filed in the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis & Clark (the "district court") on October 16, 1972. On November 2, 1972, decedent's Will was admitted to probate and petitioner was appointed executor. At the time of his death, decedent owned 34,423.5 shares (95.74 percent) of the total outstanding stock of Capri, Inc. *162 ("Capri") and petitioner owned the remaining shares. Petitioner is president and a full-time employee of Capri. Capri is a small holding company with interests in two insurance companies and two real estate companies, a motel located in Butte, Montana, and various rental properties. Decedent's Will authorized petitioner to redeem some of decedent's shares of Capri stock to obtain funds to pay for federal estate taxes and administration expenses. Any remaining Capri stock was left in trust for the benefit of decedent's ex-wife, petitioner, petitioner's children, and petitioner's grandchildren. On June 27, 1973, petitioner, as executor, entered into an agreement ("Agreement") with Capri wherein he agreed to pay Capri his executor's fees of $141,000, [2] plus an additional $14,000 of extraordinary fees for accounting and appraisal services, for services to be performed by Capri for decedent's estate. Because the Agreement is the focal point of the dispute in his case, it is reproduced here in full: THIS AGREEMENT, made and entered into this 27th day of June, 1973, by and between *163 JAMES O'CONNELL as Executor of the ESTATE OF J. E. O'CONNELL, deceased, hereinafter referred to as "Executor" and CAPRI, INC., a Delaware Corporation, with principal place of business in Helena, Montana, hereinafter referred to as cCapri". WITNESSETH: WHEREAS, J. E. O'Connell died testate on the 8th day of October, 1972, in the City of Helena, State of Montana; and WHEREAS, the Executor was appointed Executor under the Last Will and Testament of the said J. E. O'Connell; and WHEREAS, Letters Testamentary were issued to the Executor on the 2nd day of November, 1972, and the Executor has served since that date; and WHEREAS, the Executor is the President of and a full time employee of Capri, and as such dedicates his entire time and talents to the business of Capri; and WHEREAS, the Executor has engaged the employees of Capri to work on the Estate of J. E. O'Connell and has used the facilities of Capri for the administration of the Estate during working hours; and WHEREAS, the Capri, Inc. stock is the subject of a Trust under the Will of J. E. O'Connell for the benefit of others as well as the Executor; NOW, THEREFORE, Executor agrees that in consideration of: his continued *164 employment with Capri; the use of Capri's facilities and employees in the administration of the estate and because of this fiduciary relationship both in respect to the Estate and the Trust created under the Will to which the Capri stock is to be distributed, he will pay to Capri his Executor's fee in the total amount of $141,000.00 and an additional amount of $14,000.00 for extraordinary accounting and appraisal services on the following terms and conditions: I. Allocation of Fee
It is agreed that the fee will be paid in equal annual installments of $31,000.00 per year for a period of five years, the first such payment to be made in the month of June, 1973, and a like amount each June thereafter until the final payment is made in June, 1977. II. Duties of Capri
It is agreed that Capri will afford the Executor time during business hours to administer the Estate of J. E. O'Connell, deceased, and will likewise furnish any or all of its employees upon the request of the Executor to perform accounting and appraisal services for the Executor. It is further agreed that the physical facilities of Capri shall be made available to the Executor for use in administering *165 the Estate. III. Term of Contract
It is understood that the Estate will be in the process of administration for a minimum of ten years in that the Estate has elected to pay the Federal Estate Tax in installments and in addition has elected to delay the payment of Estate Tax on the reversionary interest in a Trust until six months after reversion of said interest. Capri agrees to make its employees and facilities available for the administration of the Estate, the redemption of stock to pay costs of administration, and for any and all other services necessary in administering or executing the Estate of J. E. O'Connell, deceased. IV. Binding Effect
This contract shall extend to and be binding upon the successors and assigns of the respective parties hereto. V. Effective Date
This contract shall be effective upon the receipt of Court approval. IN WITNESS WHEREOF, this contract has been signed and delivered the day and year first above written. /s/ James O'Connell / JAMES O'CONNELL Executor of the Estate of J. E. O'Connell, Deceased CAPRI, INC. /s/ By James O'Connell / JAMES O'CONNELL President Capri could not, pursuant to Montana law, *166 act as executor of the estate. On June 29, 1973, petitioner filed his First Accounting in which he requested approval of the Agreement. On July 13, 1973, the district court approved the Agreement. On June 13, 1974, the estate paid $31,405,34 to Capri. The check stub for this payment read: 31,405.34 in full payment of
Executor & Actg. Fee
Installment
$31,000.00 [3]
Housekeeper
Labor & Taxes
405.34
$31,405.34
The estate's Journal reflected this payment as "Housekeeper Expense Executor & Actg. Fee." Both the Journal entry and the check stub were included in petitioner's Third Accounting and approved by the district court. On June 13, 1975, the estate paid $31,000 [3] to Capri. The check stub for this payment read "Annual Installment for Accounting Fee & Executor Fee." The Journal entry for this payment stated: "Capri, Inc. Annual Installment for Accounting & Executor Fees." Both the Journal entry and the check stub were included in petitioner's Fifth *167 Accounting and approved by the district court. Capri included these payments from the estate in its gross income in 1974 and 1975. Petitioner as executor was responsible for marshalling the estate's assets, paying the estate's debts and taxes, preserving the assets from waste, preparing and presenting to the probate court an inventory and accountings, and distributing the residue. 3a Petitioner could not have administered the estate without assistance. On October 9, 1972, the day after decedent's death, Capri began rendering services to the estate. However, no fee arrangement for such services was decided upon until the Agreement was executed on June 27, 1973. Capri was uniquely qualified to assist in the probate of the estate because its stocks were a major asset in the estate and because its employees were familiar with all the assets in the estate. The employees of Capri, and the work each did on the estate, are as follows: *168 Petitioner (the president, whose work for Capri consisted primarily of investment management for the two insurance companies which Capri owned in whole or in part) dealt primarily with the estate's investments. He managed the investments, decided which assets to sell in order to raise cash to pay debts and taxes, and made certain reinvestment decisions. Martha Farmer (bookkeeper for Capri) did primarily bookkeeping for the estate. She established and kept a set of double entry books, made monthly statements, evaluated the estate's stocks and bonds monthly, kept a running balance of the amounts in the estate's bank accounts, kept a cash journal, handled the estate's banking and reconciled bank statements, handled the mechanics of stock sales and Capri stock redemptions, assisted in preparing semi-annual accountings submitted to the probate court, assisted in preparing the Federal estate tax return, assisted in preparing the inventory submitted to probate court, and testified at the Tax Court case concerning the valuation of the estate's assets. Wanda Radley (Capri's secretary) did secretarial work for the estate. Don Campbell (Capri's vice president and comptroller) is *169 a C.P.A. He did primarily accounting and tax work for the estate. He worked with Martha Farmer in setting up the estate's books and journal, caused the estate to elect to pay estate tax over 10 years, prepared all estate income tax returns and decedent's final income tax return, worked with appraisers in preparing the inventory of the estate's assets, did tax research, prepared an annual report for the estate, made a valuation of the estate's assets both as of the date of death and alternative valuation date, reviewed semi-annual accountings presented to the probate court, determined whether to take expenses as deductions on the estate tax return or the income tax returns, estimated the estate's tax liabilities and the estate's revenues, handled the audit of the estate's income tax returns, assisted in the preparation of the estate's Montana Inheritance Tax Return, settled decedent's federal gift tax controversy, and handled the audit of the estate tax return from the time the estate tax examiner audited it until it was to be litigated in the Tax Court. (The estate was represented by the law firm of Kline & Niklas throughout its probate for which the firm received extraordinary *170 fees for legal services it performed.) None of Capri's employees, except petitioner, received payments from the estate. All are paid salaries by Capril. Capri used its office facilities and equipment in the probate of the estate. In addition, Capri used its company car and paid some of the travel expenses incurred in connection with the probate of the estate. Capri charges a fee to the insurance companies in which it holds an interest and to petitioner for services it renders to them. Capri also charged decedent for services rendered to him prior to his death. Had Capri's facilities and employees been unavailable to the estate, petitioner would have had to hire an accounting firm and a trust company to assist him. An accounting firm would have charged him approximately $160,000 to prepare all tax returns and do the work needed to prepare for audits and the litigation of the Tax Court case. A trust company would have charged him $136,650 for the period 1973 through 1978 only to take custody of and manage all the securities, handle security sales and purchases, given investment advice, and provided detailed accountings.The $155,000 paid to Capri for the services it rendered *171 was reasonable. Petitioner did not waive his executor's fees; instead he received them and then paid them over to Capri, in accordance with the Agreement, for services rendered by Capri. In his statutory notice for the years 1974 and 1975, respondent determined that petitioner had failed to include in income executor's fees of $28,200 each year. OPINION The issues for determination are (1) whether petitioner is taxable on the executor's fees paid by the estate in 1974 and 1975, and (2) if petitioner is taxable on those fees, whether he is entitled to deduct the amounts paid to Capri for the services it performed. Both parties agree that income is taxable to him who earns it. Lucas v. Earl,281 U.S. 111 (1930). Petitioner asserts that Capri earned the fees paid to it, and, under the principles set forth in Lucas v. Earl, he cannot be taxed on income earned by Capri. Respondent, on the other hand, maintains that the executor's fees paid by the estate in 1974 and 1975 are taxable to petitioner because he earned them. We agree with respondent.
Gross income *172 means all income from whatever source derived, including compensation for services such as fees and commissions. Sec. 61(a)(1). Fees and commissions earned as an executor of an estate are income to the executor. The executor must recognize as income fees and commissions either actually or constructively received by him. Sec. 1.451-2, Income Tax Regs.
Petitioner was named executor in the decedent's will and was appointed the executor by the district court.Petitioner has at all times since his appointment acted as executor of the estate. Petitioner submitted documents to the district court which he signed as executor. Petitioner, as executor, signed all federal and state tax returns. Capri, the only other party that might arguably have been the executor, could not, pursuant to Montana law, act as executor of the estate. The Agreement between the estate and Capri dated June 27, 1973, was signed by petitioner as executor and as president of Capri. In that Agreement petitioner specifically agreed to "pay to Capri his Executor's fee in the total amount of $141,000." Petitioner paid Capri five payments of $31,000 each; $28,200 of each payment was one-fifth *173 of the total amount ($141,000) of executor's fees allowed under Montana law in the absence of a provision in the will providing for other compensation. [4]Mont. Rev. Codes Ann. §§ 91-3405 and 91-3407. The remaining $2,800 per year was for extraordinary accounting and appraisal services. In the estate's Journal for 1974 the $31,405.34 payment was recorded for "Housekeeper Expense Executor & Actg. Fee." In 1975 the Journal entry for the $31,000 payment read "Capri, Inc. Annual Installment for Accounting & Executor Fees." Petitioner submitted these entires to the district court on his periodic accountings and the court approved them. Petitioner made numerous arguments why he should not be taxed on his executor's fees. First, petitioner argues that he waived his executor's fees. Second, petitioner claims that Capri earned the fees paid to it and was taxable on them, and petitioner cannot also be taxable on those fees. Third, petitioner claims that he assigned both his right to the executor's fees and his obligations as executor to Capri, and an assignment of the right to earn *174 income is not a prohibited assignment of income under Lucas v. Earl. Fourth, petitioner argues that the Agreement is a covenant not to compete between petitioner and Capri pursuant to which petitioner is obligated to turn over to Capri any executor's fees he earns. Petitioner first argues that he waived his executor's fees. If an executor clearly establishes as intent to waive his executor's fees prior to rendering substantial services to the estate, he will not be treated as constructively receiving fees or commissions for his services. Breidert v. Commissioner,50 T.C. 844 (1968). Petitioner argues that he specifically waived his executor's fees in the Agreement, that he had no intention of receiving any executor's fees and that he has received no executor's fees. We find, however, that petitioner did not waive his executor's fees in the Agreement nor did he intend to waive his executor's fees. Petitioner's intent to pay "his Executor's fee" to Capri is established by the clear language in the Agreement and by petitioner's accountings and reports to the district *175 court. Petitioner argues that the language of the Agreement merely creates an ambiguity as to what was intended by the Agreement. The use of "his Executor's fee" in the Agreement he calls "unfortunate." According to petitioner's testimony, the Agreement was not executed with the present situation in mind. Don Campbell testified that the Agreement was entered into to avoid the possibility that there was a constructive dividend from Capri to the estate or petitioner, based on the value of the services rendered by Capri to the estate. We conclude that the effect of the Agreement was to compensate Capri for the services it would render to the estate on behalf of petitioner in his capacity as executor. Petitioner's second argument is that if Capri earned the fees paid to it, then Capri properly reported the fees and petitioner cannot be taxed on income earned by Capri. That simply is not so. Petitioner earned the income for acting as executor; Capri earned the income as compensation for services performed for the executor. Petitioner's third argument is that, if he assigned his executor's fees to Capri, he also assigned the obligation to perform the executor's services to Capri. *176 Petitioner cites Iowa Bridge Co. v. Commissioner,39 F. 2d 777 (8th Cir. 1930), as authority for the proposition that a valid assignment of an entire contract will shift the contract income to the assignee. To come under Iowa Bridge Co. v. Commissioner,supra, petitioner must assign both the rights and obligations under a contract. Petitioner did not do so in this case. Compare National Contracting Co. v. Commissioner,105 F. 2d 488 (8th Cir. 1939). Petitioner was and remained executor, and alone was responsible as such. He merely hired Capri to work for him in carrying out his duties as executor. Petitioner's fourth and final argument is that the Agreement is actually a covenant not to compete between himself and Capri.We find no merit in this argument. The Agreement is a contract for services from Capri. There is no language indicating that the Agreement or any part of it is a covenant not to compete. Having concluded that petitioner is taxable on the $28,200 of executor's fees paid by the estate in each of 1974 and 1975, we turn to the second issue, whether petitioner is entitled to deduct those amounts which under *177 the Agreement he paid to Capri for services rendered by Capri.
Section 212(1) provides that an individual may deduct all ordinary and necessary expenses paid by him during the taxable year for the production or collection of income. Rev. Rul. 55-447, 1955-2 C.B. 533, provides that where an executor of an estate, who receives executor's fees from the estate, makes payments from his own funds to co-executors or others for their experienced assistance to him in the administration of the estate, such assistance made necessary because of their greater familiarity with the problems of the estate, the payments so made are deductible in the year made as nontrade or nonbusiness expenses incurred in the production of income. So here petitioner paid Capri for services to help him perform his duties as administrator. The amount paid for those services was reasonable. Moreover, at least $28,200 worth of those services in each year were for services for which the executor was compensated by his executor's fees and for which the estate could not be charged an amount in addition to his *178 executor's fees. Under the circumstances petitioner is entitled to a deduction for the $28,200 in issue in each of 1974 and 1975. Decision will be entered under Rule 155. Footnotes
1. Margaret Murel O'Connell is a petitioner solely by virtue of having filed a joint return with her husband.↩
2. The executor's commissions were calculated under Mont. Rev. Codes Ann. § 91-3407 (1947).↩
3. $28,200 of each $31,000 installment represents executor's fees; only these fees are in issue. The remainder represents extraordinary fees paid to Capri for accounting and appraisal services.↩
3. $28,200 of each $31,000 installment represents executor's fees; only these fees are in issue. The remainder represents extraordinary fees paid to Capri for accounting and appraisal services.↩
3a. Mont. Rev. Codes Ann. § 91-3201 (1947).↩
4. The decedent's will in this case contained no provision providing for other compensation.↩