## C. F. MARTIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61735. Promulgated March 17, 1936.

*Jay C. Allen, Esq.*, for the petitioner.
*S. B. Anderson, Esq.*, for the respondent.

### OPINION.

McMahon: This is a proceeding for the redetermination of a deficiency in income tax for the year 1929 in the amount of $3,588.74.

The issues raised by the pleadings, and our findings of fact and our opinion as to each, are set forth separately.

### I.

It is alleged in the petition that the respondent erred in including the gain arising from a building contract in the 1929 gross income of the petitioner.

*Findings of Fact.*—The petitioner for about 25 years was engaged in the general contracting business with his office in Seattle, Washington.

Under date of November 17, 1928, he entered into a written contract with the 45th & Brooklyn Investment Co., a corporation, hereinafter called the Investment Co., for the construction of "An 8 story and basement Office Building and 2 story and basement Annex", hereinafter referred to as the Brooklyn Building. The contract provided that the work to be performed under the agreement should be commenced as soon as possible and should be "substantially completed" July 1, 1929, that the petitioner should receive for the performance of the contract, "subject to additions and deductions provided therein", $350,000, payable as follows:

On or about the *First* day of each month *Ninety* (*90*) per cent of the value, based on the Contract prices, of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to the —— day of that month, as estimated by the Architect, less the aggregate of previous payments; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to *Ninety-five* per cent of the contract price *Three Hundred, Fifty Thousand Dollars* ($350,000.00)

Payments to be made by owner and accepted by Contractor as follows: $220,000.00 from loan funds and secured from the Seattle Title Trust Company—$90,000.00 as second mortgage or second mortgage bonds bearing 7% interest per annum, due and payable in five years—and the balance of $40,000.00 in preferred stock of said corporation issued by owner of a total issue of $80,000.00 and bearing interest at 7% per annum.

\* \* \* Final payment shall be due 30 days after substantial completion of the work provided the work be then fully completed and the Contract fully performed.

Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the Contract and the contract fully performed he shall promptly issue a final certificate, over his signature, stating that the work provided for in this Contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable.

Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work has been paid.

If after the work has been substantially completed, full completion thereof is materially delayed through no fault of the Contractor, and the Architect so certifies, the Owner shall, upon certificate of the Architect, and without terminating the Contract, make payment of the balance due for that portion of the work fully completed and accepted. Such payment shall be made under the terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

The Seattle Title Trust Co. held the first mortgage on the Brooklyn Building in the principal amount of $250,000 and payments of a part of the contract price were paid by it on approval of the architect. Before the building was completed, the Investment Co. was unable to meet its obligations, and the Seattle Title Trust Co. informed the petitioner that the Investment Co. was delinquent in payments required to be made under the mortgage, such as taxes and interest, and that it would proceed to foreclose the mortgage immediately. In October 1929, the Brooklyn Building was sold to the Metropolitan Building Co., which company at that time purchased the second mortgage on the Brooklyn Building in the principal sum of $90,000, from the petitioner.

It was the practice of petitioner to report gain or loss on construction contracts in his income tax returns upon the completed contract basis. The books of account of petitioner were kept and his income tax returns were made on an accrual basis. The Brooklyn Building contract was closed on the books and reflected in profit and loss therein as of January 31, 1930, and reported in the 1930 income tax of petitioner.

The contract heretofore described was not completed in 1929.

*Opinion.*—No question was raised as to the correctness of the respondent's computation of the amount of the gain realized on such contract. The only question to be determined on this issue is whether the contract was completed in 1929 as determined by the respondent so as to require the return in 1929 of the gain realized therefrom.

The petitioner and his accountant both testified that it had been the practice of petitioner to report gains or losses on construction or

# 114

building contracts on the completed contract basis, that the Brooklyn Building contract was not completed until 1930, and that the gain thereof was reported in the petitioner's 1930 income tax return.

The Brooklyn Building contract is a long-term contract within the definition contained in article 334 of Regulations 71,[1] and, being such, the petitioner is entitled, under the provisions of that article, to return the profit thereof in the year the contract is completed. *R. G. Bent Co.*, 26 B. T. A. 1369.

On brief the respondent concedes that some work was done on the building during 1930, but does not concede that the work in 1930 was work required under the contract in evidence, and contends that the work done on the building in 1930 was entirely in the nature of extra work.

It appears from the evidence that, after the petitioner commenced the construction of the Brooklyn Building and before it was completed, the Investment Co. was unable to meet its obligations, that the holder of the first mortgage threatened foreclosure, and that the petitioner, to protect his interest in such contract and his second mortgage on the building, brought about the sale of the building to the Metropolitan Building Co. The testimony of the petitioner, of the sheet metal and roofing subcontractor, together with one of his employees, the ornamental iron subcontractor, to which subcontractors the petitioner had sublet the sheet metal and ornamental iron work on the Brooklyn Building, respectively, and also of three employees of the petitioner, is to the effect that the Brooklyn Building was not completed until February or March of 1930, that, while some of the work done during 1930 was in the nature of repair and replacement, the work done during 1930 was substantial and not the usual gathering up of loose ends about a completed building; and all of the work was done in fulfillment of the contract and such contracts thereunder. The evidence shows that this work included the installation of vents, in which dampers with fusible links for fire protection had to be installed; attaching expansion bolts in the coping

---

[1] ART. 334. *Long-term contracts.*—Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used herein the term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year. Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon the following bases:

\* \* \* \* \* \* \*

(b) Gross income may be reported in the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion.

\* \* \* \* \* \* \*

on the two-story annex; putting the mitres around the penthouse; completing and finishing the fire escapes, including the attaching of parapet ladders and railing; installing fireproof doors and a gate in the main entrance; affixing various hardware and also plates for the electrical work; reraking the gravel on the roof and removing considerable gravel therefrom; and various other work. It appears from the testimony that considerable work necessary to the construction of the building was done in 1930 and was subject to the approval of an inspector of the Metropolitan Co. The petitioner testified that he received some payments in 1929, and in the early part of January 1930, that he could not remember what payments he received in 1929, but that all the payments were entered in his books. The accountant had the books with him at the hearing and testified, in part, from them that the amount of $408,477.28 shown as the gross income of petitioner's business in schedule A of the 1930 income tax return represented "all the entries of receipts for three years" on the Brooklyn Building contract and the Le Sourd contract, and that both were completed in 1930. The completion of the Le Sourd contract in 1930 is not in question here. The Brooklyn Building contract was entered into in 1928, and since the entries for receipts covered three years, some payment or payments were entered in 1930. As provided in the contract the last payment thereunder was due 30 days after substantial completion provided "the work be then fully completed and the Contract fully performed", which was to be evidenced by the issuance of a final certificate of the architect upon his final inspection and acceptance of the work. Hence, under the general contract itself, final payment was to be made only upon full completion of the contract, final inspection, and acceptance. While we do not know the details of the arrangements made with the Metropolitan Building Co., it does appear, as heretofore stated, that they purchased the building before it was completed and that the work was subject to the approval of its inspector. The construction manager of petitioner at the time, who left the employ of petitioner at the end of February 1930 to go into business for himself, testified that in 1930 he tried to wind up the different subcontracts on this building, endeavored to get "final acceptance from the new owners" and to "see that they were satisfied and that they would release us." The form of contract or contracts entered into between the Metropolitan Building Co., the Investment Co., and the petitioner at the time the contract and building were taken over by the Metropolitan Building Co. is not disclosed by the evidence. However, it is conceded on brief by respondent that "there is ample justification for believing there was some sort of an agreement." The inference that such agreement grew out of the original general contract and the failure

of one of the original parties thereto to meet its obligations thereunder is unavoidable. It appears from the evidence the Metropolitan Building Co. was in effect substituted under the contract for the Investment Co. Furthermore, contracts of such a character are apt not to be completed without some change in the details. Such changes in the details are merely modifications or amendments of the original contract and as such are a part of the original contract as changed and necessarily have to be complied with in order to complete the contract as amended. Furthermore, the contract provides that the contract price of $350,000 is "subject to additions and deductions provided therein" indicating that probable modifications thereof were contemplated.

In computing the gain on this transaction it appears that the respondent took into consideration the receipt by the petitioner from the Metropolitan Building Co. of a leasehold interest in the realty valued at $74,000 in consideration of the satisfaction and discharge of his second mortgage of $90,000 and also the substitution of short notes in the amount of $42,000 for the deferred payments in the amount of $47,000 provided for in the agreement covering the leasehold interest. It seems to us that if the transactions and agreements between the Metropolitan Building Co. growing out of the original contract are to be recognized for the purpose of determining the gain realized by the petitioner from the original contract, the subsequent agreements and transactions in modification thereof, as to the construction and completion of the building as disclosed by the evidence, should also be recognized. It appears from the evidence that substantial work was done on the building in 1930 and that the Metropolitan Building Co. had not accepted and approved of all the work in 1929. Upon the whole record, therefore, we have found as a fact and now hold that the Brooklyn Building contract was not completed in 1929; hence the gain realized therefrom by the petitioner is not properly includable in his taxable income for 1929. The action of the respondent in this respect is disapproved. The respondent, on brief, contends that the petitioner has failed to overcome the presumption of the correctness of his determination and directs attention to the fact that the petitioner's books were available at the hearing but were not placed in evidence. It appears from the record that the accountant who prepared the petitioner's returns for 1929 and 1930 and kept the books had the books before him as he testified. He testified that the contract was completed in the spring of 1930, that he made the closing entries therein as of January 31, 1930, and that the contract was not finished at the time but nothing that would be done would be any expense to petitioner or any cost, so it was closed. It seems to us that if the books failed

to substantiate the testimony of petitioner and his accountant and showed that no payments on this contract were entered therein in 1930, it was encumbent upon counsel for respondent to offer them in evidence, and having failed to avail himself of such opportunity he is not now in a position to contend that "the record as made is sadly lacking of proof sufficient to overcome the Commissioner's presumption of correctness."

## II.

It is alleged in the petition that, in the event that the gain realized from the Brooklyn Building contract is held to be properly returnable in 1929, the commission in the amount of $10,000 should be allowed as a deduction in 1929, as the judgment therefor was inherent in and arose out of such contract.

*Findings of Fact.*—George C. Lemke, J. E. Dalk, and T. F. Adams claimed that the sale of the Brooklyn Building to the Metropolitan Building Co. was made through their efforts upon agreement with the petitioner and demanded a commission therefor of the petitioner which he refused to pay. This agreement was separate from the construction contract as modified in question here. Suit was brought against the petitioner in February 1930 to recover the claimed commission, which he contested. After a hearing, judgment was entered December 23, 1930, against the petitioner in the sum of $10,000, together with interest from October 15, 1929, until paid, and for costs and disbursements in the amount of $123.20, which judgment was paid in 1930.

*Opinion.*—Since we have held that the gain realized from the construction contract here involved was not includable in petitioner's 1929 income, it is not necessary for us to consider this question; but see *Lucas* v. *American Code Co.*, 280 U. S. 445; *Consolidated Tea Co.*, 19 Fed. (2d) 382; *Lehigh & Hudson River Railway Co.*, 13 B. T. A. 1154; affd., *Lehigh & Hudson River Railway Co.* v. *Commissioner*, 38 Fed. (2d) 1015; certiorari denied, 281 U. S. 748.

## III.

The next question to be determined is whether the respondent erred in increasing the 1929 gross income by petitioner by adding thereto three items in the amount of $858, $37.50, and $67.81.

*Findings of Fact.*—Left-over lumber and other materials were stored in petitioner's warehouse. Each year an inventory was taken of the material which was considered salable. Some of such material was sold occasionally or withdrawn and used on jobs. On the so-called Lyndale Apartment job some of such material was withdrawn from the warehouse, and included in cost of construc-

tion thereof. In computing profit from sales the respondent disallowed the items here in question as a part of construction cost, or cost of material sold, and thereby increased taxable income by the following items referred to as: Lyndale Apartments—$858, Sale to Turtellette-Bradley, Inc., $37.50, and Le Sourd Apartments—$67.81.

*Opinion.*—The petitioner contends that the items of $858, $37.50, and $67.81 represent items of building cost and material withdrawn from petitioner's warehouse and do not represent profit. The revenue agent's report discloses that the amount of $858 was disallowed as a part of the construction cost in computing the profit on the sale in 1929 of the Lyndale Apartments. The other two items represent either sales of material or deliveries to jobs in progress of construction. The evidence pertaining to these items is very unsatisfactory, it appearing therefrom in substance that the petitioner withdrew from his warehouse left-over materials either for purpose of sale or use on jobs in progress at the "going" prices. If we may assume from the term "left-over" that these materials were materials not used on prior jobs, there is no testimony to show whether these materials were credited on such jobs and actually paid for by the petitioner or whether he acquired them at no cost to himself. The burden of proof rests upon him. As we are unable to find from the evidence presented that the respondent erred in this respect we must approve his action in restoring such items to taxable income.

## IV.

The last question to be determined is whether the respondent, in computing the gain realized on the sale of a launch, erred in reducing the cost basis by deducting therefrom depreciation in the amount of $728.57.

*Findings of Fact.*—The petitioner took in a boat on a trade. The boat was not used except on one trip, to test the engine. It was decided that the boat needed a new clutch, new planking above the water line, caulking, and painting. The boat was rebuilt and sold.

*Opinion.*—The petitioner contends that the cost basis of the boat sold should not be decreased by the deduction of depreciation. It appears from the statement attached to the notice of deficiency that the respondent added to income reported on return $182.14, representing "Gain on sale of launch."

Section 111 of the Revenue Act of 1928 provides that in determining the gain or loss from the sale or other disposition of property, the basis "shall be diminished by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization, and depletion *which have since the acquisition of the property been allowable in respect of such property* under this Act or prior income tax laws."

(Emphasis supplied.)   Section 23 (k) of the same act provides that in computing net income there shall be allowed as a deduction a reasonable allowance for the exhaustion, wear and tear "of property used in the trade or business."  The boat was not used in the petitioner's trade or business or for his pleasure.  The uncontradicted testimony of petitioner is that such boat was not used at all except for testing purposes, that it needed considerable repairs, that it was repaired or rebuilt, and then sold.  Under the circumstances, no depreciation would have been allowable on such boat under section 23 (k), *supra*, and hence the basis should not be diminished by any depreciation in computing loss or gain on the sale thereof under section 111, *supra*.  *J. A. Talbot*, 23 B. T. A. 792; *Marjorie G. Randall*, 27 B. T. A. 475.  There is no dispute about the cost basis or sale price of such boat as used by the respondent in his computation.  The action of the respondent in adjusting the basis by the deduction of depreciation is not approved and accordingly, the gain or loss on the sale of this boat will be recomputed under Rule 50 without such adjustment.

*Decision will be entered under Rule 50.*