**350**

Frank L. KING, Jr., et ux., Florence S.
King, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 775.

United States District Court
E. D. Texas,
Texarkana Division.

July 31, 1963.

L. E. Keeney, and Leon F. Pesek, of
Raffaelli & Keeney, Texarkana, Tex., for
plaintiffs.

Stanley F. Krysa, Dept. of Justice,
Fort Worth, Tex., Wm. Wayne Justice,
U. S. Atty., Tyler, Tex., for defendant.

SHEEHY, Chief Judge.

This is a tax refund case in which the
Plaintiffs are seeking to recover income
taxes and interest thereon that they contend were wrongfully assessed against
and collected from them for the year 1955
by the Commissioner of Internal Revenue,
hereinafter referred to as Commissioner.

This case was submitted to the Court
on a Stipulation of Facts entered into by
the parties and filed in this cause. Such
Stipulation of Facts is adopted as the
Findings of Fact herein, and only such
of those facts as are deemed necessary to
an understanding of the Court's decision
will be stated in this opinion.

The Plaintiff, Frank L. King, Jr.,
d/b/a King Construction Company, hereinafter referred to as the Construction
Company, was engaged in the general construction business as a proprietor from
1951 through August 31, 1955. On November 23, 1955, the Housing Authority
of the City of Texarkana, Texas, hereinafter referred to as the Housing Authority, under a loan contract with the Public Housing Authority, a Federal agency
hereinafter referred to as PHA, entered
into a written building contract in the
original amount of $937,068.00 with the
Construction Company. This contract,
designated as Project TEX 14–3, called
for the construction of 21 buildings consisting of 125 dwelling units and other
facilities to be completed in 400 calendar
days.

A notice to the Construction Company
to proceed on the contract was issued by
the Housing Authority on November 23,
1953. This notice provided that the work
under the contract was to commence on
November 24, 1953, and established the
completion date of the contract as December 28, 1954. The Construction Company,
as prime contractor and through various

sub-contractors, proceeded to construct the buildings and other facilities which were the subject of Project TEX 14–3. All of the work on said Project TEX 14–3 was subject to the approval and acceptance thereof by the Housing Authority and PHA.

On December 9, 1954, a final inspection was made by the Construction Supervisor; Mechanical Engineer of PHA's Field Office; an architect's representative; the contractor's superintendent; the contractor; the timekeeper and Project Engineer for PHA. As a result of this inspection, the contract items yet to be completed or corrected were set forth on a "punch list" and given to the Construction Company. Included among the many items on the punch list was one requiring the finishing of the rolling of the asphalt streets covered by the contract.

By December 13, 1954, all of the buildings and other facilities to be constructed under the contract had been completed and accepted by the Housing Authority except for the completion of several items set forth on the punch list and the completion of the rolling of the asphalt street surface as provided in the contract specifications. By December 31, 1954, all of the work under the contract was completed and accepted by the Housing Authority except for the completion of the asphalt street surface as provided for in the contract specifications. Because of cold weather and lack of traffic, the Construction Company was required to reroll the asphalt street surface when the weather turned warm before that portion of the work could be accepted. The Housing Authority withheld the sum of $750.00 until the rerolling of the asphalt street surface was done. The completion of the rerolling of the asphalt street surface was done in the late Spring of 1955 by Bruce Kennedy Sand and Gravel Company of Texarkana, Texas, to whom the work of street construction had been subcontracted, at a cost of $510.00. Said sum of $510.00 was not paid to the Bruce Kennedy Sand & Gravel Company by the Construction Company until December 31, 1955.

On January 7, 1955, by transmittal letter of the same date, the Executive Director of the Housing Authority forwarded to PHA in Fort Worth, Texas, executed copies of Certificate of Completion—Part I, the Certificate and Release executed by the Construction Company and the Schedule of Change Orders called for in the contract. The Certificate of Completion —Part I, certified to by the Executive Director of the Housing Authority, on December 31, 1954, certified that all work covered by the contract was actually completed on December 28, 1954, except for two items. One of the items excepted was the completion of the asphalt street surface. Said Certificate of Completion —Part I was approved by PHA on January 17, 1955.

On December 20, 1954, the first occupancy of said Housing Project commenced. On January 27, 1955, the Executive Director of the Housing Authority executed a notice of full availability of this project as of the last day of December 1954. This notice was duly approved by PHA on January 31, 1955.

On November 14, 1955, the Certificate of Completion—Part II was executed by the Housing Authority and approved by PHA on November 30, 1955. This Certificate of Completion shows that as of November 17, 1955, the Construction Company was due a final payment on the construction of $750.00. The sum of $750.00 was paid the Construction Company on November 18, 1955.

The total job costs for the construction was $863,124.16. As of December 31, 1954, the total job costs which had been paid by the Construction Company were $862,614.16. The total amount of job cost remaining unpaid as of December 31, 1954, was the sum of $510.00 which represented the cost of the completion of the asphalt streets. As above indicated, this cost was paid on December 31, 1955.

As of December 31, 1954, the Construction Company had received or accrued

the entire amount of the contract price with the exception of $750.00, which was the amount withheld pending the completion of the rerolling of the asphalt streets. All money due under the contract was received by the Construction Company in 1954 except the amount of $52,252.75 representing retainage, which was received on January 10, 1955, the sum of $6,875.00 representing retainage, which was received on February 10, 1955, and the sum of $750.00 which was paid on November 18, 1955, for the work performed in connection with the rerolling of the asphalt streets in the late Spring of 1955.

The Plaintiffs in their business during the periods involved and the years prior thereto consistently used the "completed contract method" of accounting for reporting income and expenditures for their general construction business.

On April 16, 1956, the Plaintiffs filed their joint income tax return for the calendar year 1955 reporting a tax liability of $11,366.46, which liability was duly discharged. The income earned from Project TEX 14–3 was not reported by the Plaintiffs in that return.

On September 1, 1955, the King Construction Company, a Texas corporation, was formed. This corporation was the successor to the proprietorship herein referred to as Construction Company. The construction contract, known as Project TEX 14–3, was transferred to the new corporation. The income from Project TEX 14–3 was reported by the corporation on its 1955 corporate tax return.

The 1955 tax returns of the corporation and the Plaintiffs were audited by the Internal Revenue Service, and it was determined that the income and profit from Project TEX 14–3 should have been reported by the Plaintiffs on their 1955 joint tax return rather than by the corporation. This adjustment plus other adjustments not in dispute herein produced a deficiency in taxes due from the Plaintiffs for the year 1955 in the amount of $68,807.21 which was duly paid by the Plaintiffs. The Plaintiffs agree that the income and profit from Project TEX 14–3 should have been reported by them instead of the corporation but do not agree

that it should have been reported in 1955, but claim that it should have been reported in 1954.

On February 10, 1961, Plaintiffs duly filed a claim for refund of taxes for the year 1955 in the amount of $14,885.79 plus interest. The Commissioner disallowed this claim on January 21, 1961, and thereafter this suit was timely filed.

Section 451 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 451) provides, in effect, that the amount of any item of gross income shall be reported in the taxable year in which received unless, under the method of accounting used by the taxpayer, the amount is properly accounted for as of a different tax year. Section 1.451–3 of Treasury Regulations on Income Tax (1954 Code), a regulation promulgated under said Section 451, defines "long-term contracts" as meaning building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted and provides two methods for reporting income from such long-term contracts. These methods are the percentage completion method and the completed contract method. It is the latter method that is pertinent in the instant case, and as to that method the Regulation provides in Subsection (b) (2) thereof:

"Gross income derived from long-term contracts may be reported for the taxable year in which *the contract is finally completed and accepted.* Under this method, there shall be deducted from gross income for such year all expenses which are properly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion." (Emphasis supplied)

Section 446(e) of Title 26 U.S.C.A., provides, in effect, that a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Commissioner of Internal Revenue.

The Plaintiffs, during the periods involved herein and the years prior thereto, having consistently used the "completed contract method" of accounting for reporting income and expenditures for their general construction business, must use such method of accounting for the gross income received on the Project TEX 14–3 contract. This, the Plaintiffs concede. Since said Project TEX 14–3 contract was a "long-term contract" within the meaning of said Section 1.451–3, supra, the only question to be determined in this case is whether said contract was *completed* and *accepted* within the meaning of Subsection (b) (2) of said Regulation in 1954 as contended by the Plaintiffs or in 1955 as contended by the Defendant.

In support of their contention Plaintiffs assert: first, that the evidence in this case shows that the contract in question was actually finally completed and accepted in 1954, and, second, that if they be mistaken as to the first assertion, the contract was *substantially completed* and accepted in 1954, and, therefore, such contract was completed and accepted within the meaning of said Section 1.451–3(b) (2), supra. Plaintiffs' first assertion finds no support in the evidence in this case. The specifications of the contract in question required the contractor to do certain paving on certain streets of the project in a certain manner. The paving of said streets in the manner required by the specifications was not completed in 1954 and was not completed until late Spring of 1955. Thus to say that the contract was finally completed in all its particulars in 1954 would be contrary to the undisputed evidence in this case.

In support of their second assertion, the Plaintiffs rely on the decision of the Tax Court in Ehret-Day Company v. Commissioner, 2 T.C. 25, and other subsequent decisions of the Tax Court following its holding in the Ehret-Day case. In the Ehret-Day case the Tax Court followed the common law rule to the effect that one, who has in good faith substantially performed all the important particulars of a building contract, is entitled to recover the difference between the contract price and amount of damages caused by his failure to perform strictly and held, in effect, that a contract is finally completed within the meaning of a regulation practically identical in its terms with Section 1.451–3(b) (2), supra, if the contractor has substantially performed all of the important particulars of the building contract. As authority for such holding, the Tax Court quoted from 17 C.J.S. Contracts § 509, pages 1087–1089. That quotation from C.J.S. now appears in 17A C.J.S. Contracts § 509, pages 816–819. The Tax Court has continuously followed that holding.[1]

If the "substantial completion" doctrine laid down and consistently followed by the Tax Court is correct, there is no question but what the Project TEX 14–3 contract was completed in 1954 because all work and material required by said contract had been performed and furnished on or before December 31, 1954, except the item of finishing the paving of the streets, which was a rather small and insignificant item when you consider it as being a $750.00 item of a construction contract exceeding $900,000.00. However, the Courts of Appeals, which have passed on the question, have without exception refused to follow the Tax Court's "substantial completion" doctrine and have held the contract must be one hundred per cent completed and accepted in order to comply with the regulations requiring the contract to be "finally completed and accepted." Directly in point is E. E. Black, Ltd. v. Alsup, 9 Cir., 211

---

1. See Bien v. Commissioner, 20 T.C. 49; Ben C. Gerwick, Inc. v. Commissioner, decided March 31, 1954 (1954 P.H. T.C. Memorandum Decisions, par. 54,100); Irwin v. Commissioner, 24 T.C. 722; Wohlfeld v. Commissioner, decided June 30, 1958 (1958 P.H. T.C. Memorandum Decisions, par. 58,128); Turner v. Commissioner, decided September 30, 1958 (1958 P.H. T.C. Memorandum Decisions, par. 58,181); and Hooper Construction Company v. Renogation Board, 35 T.C. 837.

F.2d 879. In that case the Court of Appeals for the Ninth Circuit in construing Section 29.42–4(b) of Regulations III, which was identical to Section 1.451–3 (b) (2), supra, the regulation involved herein, 211 F.2d stated at page 880:

"We think the language of the pertinent Treasury Regulation governs and was intended to govern the situation, not unrelated rules of the common law. In short, we are of opinion that the Regulation should be taken as meaning what it plainly says, hence we believe that the Ehret-Day case was wrongly decided. The 'substantial completion' doctrine there applied tends merely to import into the tax law an unwarranted and undesirable uncertainty."

In that case the taxpayer, a building contractor, who consistently made its Federal tax returns on the "completed contract basis" had completed in 1945 all of a construction contract with the exception of the installation of thermostat units for the fire alarm system in the project's community building. All of the contract price was paid the contractor in late 1945 except the sum of $533.50, which was withheld until the completion of the installation of said thermostat units. The thermostats were not installed until March 1946, and promptly thereafter said balance of $533.50 was paid the contractor. In that case it was the Commissioner who applied the "substantial completion" doctrine of the Tax Court and ruled that the gross income from the contract should have been reported by the taxpayer in his 1945 return rather than in 1946 as was done by the taxpayer. In holding that the taxpayer was correct in not reporting its profits on the construction contract in its return for 1945, the Court of Appeals used the language above quoted.

In Thompson-King-Tate, Inc. v. United States, 296 F.2d 290, at pages 293 and 294, the Court of Appeals for the Sixth Circuit joined the Court of Appeals for the Ninth Circuit in refusing to follow the "substantial completion" doctrine of the Tax Court and stated:

"We are of the opinion that the Regulation must be construed according to its plain wording and that under it, substantial completion of a long-term construction contract is not the same as final completion and acceptance, as provided by the Regulation."

The Court of Appeals for the First Circuit in Rice, Barton & Fales, Inc. v. Commissioner, 41 F.2d 339, made a ruling similar to the rulings of the Sixth and Ninth Courts of Appeals above mentioned.

Whether or not there has been "substantial completion" of a particular contract is not subject to a definite rule or formula. Opinions as to whether a particular contract has been substantially completed will vary with individuals called upon to determine the question, whether those individuals be judges or employees of the Internal Revenue Service. Therefore, the "substantial completion" doctrine of the Tax Court would inject another uncertainty into our tax laws where there are already far too many uncertainties. This, as indicated by the Court in the Black case, supra, is both unwarranted and undesirable. Consequently this Court joins the Courts of Appeals of the Sixth and Ninth Circuits in rejecting the "substantial completion" doctrine of the Tax Court and finds and concludes that under the facts in this case the Project TEX 14–3 contract in question was not finally completed within the meaning of Section 1.451–3(b) (2), supra, until 1955. In light of that finding and conclusion, it follows that the Commissioner was correct in his determination to the effect that the income and profit from the Project TEX 14–3 contract should have been reported by the Plaintiffs in their 1955 joint tax return and in the assessment of the additional tax resulting from such determination.

Judgment will be entered denying Plaintiffs a recovery and dismissing this action.

This Memorandum Decision will constitute the Findings of Fact and Conclusions of Law herein as provided for by Rule 52, F.R.Civ.P.